**UNITED STATES of America,**
**Appellee,**

v.

**Luis SANTIAGO, Defendant–Appellant,**

**Jose Tirado, also known as Chucho,**
**Andre Brackett, also known as Dre,**
**and Freddy Martinez, Defendants.**

**Docket No. 03–1335.**

United States Court of Appeals,
Second Circuit.

Argued: Jan. 6, 2004.

Decided: Sept. 15, 2004.

Raymond F. Miller, Assistant United States Attorney for the District of Connecticut (Jeffrey A. Meyer, Assistant United States Attorney, of counsel; Kevin J. O'Connor, United States Attorney, on the brief), Hartford, CT, for Appellee.

Thomas G. Dennis, Federal Public Defender, District of Connecticut, Hartford, CT, for Defendant–Appellant.

Before: WINTER, JACOBS, and STRAUB, Circuit Judges.

PER CURIAM:

Defendant–Appellant Luis Santiago pleaded guilty before the District Court for the District of Connecticut (Alvin W. Thompson, *Judge*) on April 10, 2002 to one count of conspiracy to distribute and to possess with intent to distribute 500 grams or more of cocaine from August to December 2001 in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii), and 846. The base offense level applicable to Santiago under section 2D1.1(c) of the United States Sentencing Guidelines was 26. After conducting multiple sentencing hearings, the District Court applied (i) a two-level enhancement for Santiago's possession of firearms in connection with the drug conspiracy, *see* U.S.S.G. § 2D1.1(b)(1), (ii) another two-level enhancement to reflect Santiago's role in the offense, *see* § 3B1.1(c), and (iii) a three-level reduction for Santiago's acceptance of responsibility, *see* § 3E1.1. As a result, Santiago's adjusted offense level was 27 and, at criminal history category II, the applicable Guidelines range would have been 78 to 97 months' imprisonment. Finding that Santiago had used a firearm to shoot and injure Juan ("Papito") Arroyo in the commission of the conspiracy, the District Court, over Santiago's objection, granted the government's motion for an upward departure under section 5K2.6 of the Guidelines. The court determined that the circumstances warranted a three-level departure and increased Santiago's offense level to 30, with an applicable Guidelines range of 108 to 135 months' imprisonment. On May 27, 2003, after reconsidering arguments from the parties about the appropriateness of the departure, the court reaffirmed its determination that a three-level upward departure was appropriate and sentenced Santiago to 108 months' imprisonment, five years' supervised release, and a $100 special assessment.

On appeal, Santiago raises two principal challenges to his sentence. First, he asserts that the District Court improperly applied the weapons enhancement under section 2D1.1(b)(1) of the Guidelines. In addition, he argues that the District Court's upward departure, pursuant to section 5K2.6, was inappropriate and that the three-level extent of that departure was unwarranted. In connection with his challenge to the departure, Santiago argues—and the government agrees—that we must remand the case to the District Court because it failed to comply with the requirement outlined in 18 U.S.C. § 3553(c) (as newly amended by the Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of 2003, Pub.L. No. 108–21, 117 Stat. 650 (2003) ("PROTECT Act")) that a district court must state in writing in the judgment the specific reasons for any departure from the guidelines.[1]

## DISCUSSION

### I. The Section 2D1.1(b)(1) Weapon Enhancement

We review the District Court's "interpretation and application of the [Sentencing] Guidelines *de novo,* and its findings of related fact for clear error." *United States v. Smith,* 174 F.3d 52, 55 (2d Cir. 1999) (internal quotation marks omitted). "The sentencing court's finding that a firearm was possessed in connection with a drug offense for purposes of § 2D1.1 will not be overturned unless it is clearly erroneous." *United States v. Stevens,* 985 F.2d 1175, 1188 (2d Cir.1993).

Section 2D1.1(b)(1) of the Sentencing Guidelines prescribes a two-level increase in a defendant's offense level "[i]f a dangerous weapon (including a firearm) was possessed" in the course of a narcotics conspiracy. Application note 3 to the guideline clarifies that this enhancement "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." The parties do not dispute that, for the enhancement to apply, the government had to establish that Santiago's possession of a gun was "relevant" to his conspiracy conviction. *United States v. Ortega,* 94 F.3d 764, 767 (2d Cir.1996) ("The applicability of a specific offense characteristic, such as section 2D1.1(b)(1), depends on whether the conduct at issue is relevant to the offense of conviction.") (internal quotation marks omitted); *see also* U.S.S.G. § 1B1.3(a)(1) (defining "relevant conduct"). Santiago argues that the weapon enhancement is not applicable to him "because neither the possession of the firearm nor the shooting of [Arroyo] was relevant to the offense of conviction."

The District Court rested its application of this enhancement to Santiago on two grounds: (i) specific evidence that "Mr. Santiago used a gun to shoot Mr. Arroyo" primarily because "Mr. Arroyo planned to rob the location at which Mr. Santiago had kept money from his drug-trafficking activity"; and (ii) more general testimony that "the defendant kept guns and cocaine in the same dwelling unit."

The recordings of Santiago's phone calls prior to and following the shooting of Ar-

---

1. By letter submitted to the Court on June 25, 2004, Santiago also raises a Sixth Amendment challenge to his sentence based on the Supreme Court's recent decision in *Blakely v. Washington,* — U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (June 24, 2004). He asserts that, under *Blakely,* the weapon enhance-

ment, the role enhancement, and the upward departure were improper because they rested on factual findings made by the District Court. In light of our decision in *United States v. Mincey,* 380 F.3d 102, 105–06 (2d Cir.2004), we reject that claim.

royo make clear that, as the District Court recognized, Santiago's concern for his family was a "strong motivating factor" in the shooting. Nevertheless, the District Court, relying on both the phone call recordings and testimony from Angel Gonzalez, Santiago's neighbor and sometime employee, determined that the "dominant factor" that drove Santiago to shoot Arroyo was his need to protect the location where he had been storing drug proceeds and, in so doing, to maintain or enhance his reputation in the drug business. The court cited evidence that Santiago had been robbed several times and was concerned that these prior robberies made him look weak.

The District Court also premised its application of the enhancement on Gonzalez's testimony that Santiago "kept guns and cocaine in the same dwelling unit." According to Santiago, there was no "nexus between those guns and Santiago's drug activity" because there was no proof that the guns and drugs were at Santiago's residence simultaneously. This argument is unavailing because it ignores the fact that Gonzalez's testimony—which was not rebutted—was that Santiago possessed the firearms to protect his drug-related activities. In any event, this Court has upheld the two-level increase levied by § 2D1.1(b)(1) where a weapon was kept in the same place as the drugs, even if the weapon was not necessarily "possessed during commission of the offense." *United States v. Sweet*, 25 F.3d 160, 163 (2d Cir.1994); *see also United States v. Wilson*, 11 F.3d 346, 355 (2d Cir.1993); *United States v. Pellegrini*, 929 F.2d 55, 56 (2d Cir.1991); *United States v. Schaper*, 903 F.2d 891, 896 (2d Cir.1990).

The District Court's findings that Santiago possessed firearms in the course of and in connection with his participation in the narcotics conspiracy are amply sup-

ported by the record and, as such, we affirm the application of the two-level enhancement under section 2D1.1(b)(1).

## II. The Section 5K2.6 Upward Departure

The District Court granted the government's motion for an upward departure under section 5K2.6 of the Sentencing Guidelines because it concluded that the two level increase imposed under section 2D1.1(b)(1) did not "adequately account for [Santiago's] use of the firearm in this case." Under section 5K2.6:

> If a weapon or dangerous instrumentality was used or possessed in the commission of the offense the court may increase the sentence above the authorized guideline range. The extent of the increase ordinarily should depend on the dangerousness of the weapon, the manner in which it was used, and the extent to which its use endangered others. The discharge of a firearm might warrant a substantial sentence increase.

### A. The District Court's Decision to Depart

Santiago argued below (and reiterates on appeal) that there was not a sufficient connection between the shooting of Arroyo and Santiago's participation in the charged narcotics conspiracy (to which he pleaded guilty) to warrant an upward departure under section 5K2.6. For the reasons set forth *supra* in Part I, the District Court found that Santiago's shooting of Arroyo occurred in connection with the narcotics conspiracy.

Santiago also argued that the imposition of the section 5K2.6 departure was improper under our decision in *United States v. Kim*, 896 F.2d 678 (2d Cir.1990), because "it would result in Mr. Santiago being sentenced more harshly than if he were convicted of both the drug charge and

aggravated assault." The District Court rejected this argument on the bases that (i) *Kim* involved an upward departure under section 5K2.0, and (ii) a court is not limited by the *Kim* approach if the offense of conviction or other acts of misconduct are accompanied by factors not adequately considered by the Sentencing Commission, which the District Court found existed in Santiago's case.

Finally, the District Court justified the extent of the departure by noting, first, that section 5K2.6 clearly states that "[t]he discharge of a firearm might warrant a substantial sentence increase." In order to determine what a "substantial increase might be," the court referred to other relevant guidelines that address the use and discharge of firearms—e.g., the aggravated assault guideline, U.S.S.G. § 2A2.2, the robbery guideline, § 2B3.1, and the extortionate extension of credit guideline, § 2E2.1—and carefully reviewed the aggravating facts of Santiago's case.

### B.   The Written Statement of Reasons Requirement

Under 18 U.S.C. § 3742(e), as amended by § 401(d) of the PROTECT Act, we review *de novo* "whether a departure is justified by the facts of the case." *United States v. Huerta,* 371 F.3d 88, 94 (2d Cir. 2004) (internal quotation marks omitted). As we did before passage of the Act, we review a district court's factual findings for clear error. *See* 18 U.S.C. § 3742(e).

Section 3742(e) also directs us to determine whether the District Court provided the requisite written statement of reasons for imposing an upward departure. *See* 18 U.S.C. § 3742(e)(3)(A) (outlining procedures for appellate review of departures); *see also* 18 U.S.C. § 3553(c)(2) (providing that the sentencing court "shall state in open court the reasons for its imposition of the particular sentence" and, if the court

departs from the applicable Guideline range, it must state "the specific reason for the imposition of a sentence different from that described, which reasons must also be stated with specificity in the written order of judgment and commitment"). In this case, although the District Court did, in keeping with the requirements in place prior to the passage of the PRO-TECT Act, provide a thorough, on-the-record enumeration of the reasons for its upward departure, *see* 18 U.S.C. § 3553(c)(2) (2002), it did not reduce that statement of reasons to writing in the judgment entered May 30, 2003.

Both the defendant and the government argue that, in light of this oversight, we must remand the case to the District Court. According to the government, a remand is required under 18 U.S.C. § 3742(f)(1), which states that if we determine that a defendant's sentence was "imposed in violation of law," we "shall remand the case for further sentencing proceedings" with appropriate instructions. In the government's view, by failing to comply with the written statement of reasons requirement set forth in 18 U.S.C. § 3553(c)(2), the District Court imposed Santiago's sentence "in violation of law." This argument draws some support from our pre-PROTECT Act caselaw regarding a district court's obligation to give an adequate *oral* statement of reasons. *See, e.g., United States v. Gonzalez,* 110 F.3d 936, 948 (2d Cir.1997) ("The law in this circuit is clear that a district judge must state his or her reasons for a departure from the applicable Guidelines range. In the present case, the district court provided no such explanation. Accordingly we must remand for . . . resentencing . . . .") (citations omitted); *United States v. Zackson,* 6 F.3d 911, 923–24 (2d Cir.1993) (interpreting 18 U.S.C. § 3553(c)(1)) ("Since Congress saw fit to

mandate that there be such an articulation [of reasons for the imposition of a particular sentence within the applicable Guidelines range], we believe the imposition of a sentence without an articulation of reasons, even one briefly stated, is a sentence imposed in violation of law unless and until supported by a statement of adequate reasons.").[2]

■ In an October 2003 report to Congress, the United States Sentencing Commission appears, without explanation, to have adopted the government's reading:

> The appellate court shall set aside the sentence and remand the case with specific instructions if it finds that the district court failed to provide the required statement of reasons in the judgment and commitment order, the departure is based on an impermissible factor, or is to an unreasonable degree, or the sentence was imposed for an offense for which there is no applicable sentencing guideline and is plainly unreasonable.

U.S. SENTENCING COMM'N, DOWNWARD DEPARTURES FROM THE FEDERAL SENTENCING GUIDELINES 9, 57 (2003). Under *Chevron, U.S.A. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), we "defer to reasonable interpretations by the Sentencing Commission." *United States v. Canales*, 91 F.3d 363, 369 (2d Cir.1996); *see also* 18 U.S.C. § 3553(a)(5) (directing that sentencing courts are to consider "pertinent" policy statements issued by the Sentencing Commission); *cf. Stinson v. United States*, 508 U.S. 36, 38, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993) ("We decide that commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline.").

The deference question is complicated, however, by the fact that the Sentencing Commission's interpretation seems to ignore the very specific and clear language that follows in subsection (f)(2). As amended by the PROTECT Act, that section provides a guide for courts of appeals to follow in determining whether and when to vacate and remand in departure cases. Under § 3742(f)(2), if a court of appeals determines that "the sentence is outside the applicable guideline range" (as is true where a district court has departed upwardly or downwardly) "and the district court failed to provide the required statement of reasons in the order of judgment and commitment," the court of appeals "shall state specific reasons for its conclusions and":

> (A) *if it determines that the sentence is too high* and the appeal has been filed under subsection (a), it shall set aside the sentence and remand the case for further sentencing proceedings with such instructions as the court considers appropriate, subject to subsection (g);
> (B) *if it determines that the sentence is too low* and the appeal has been filed under subsection (b), it shall set aside the sentence and remand the case for further sentencing proceedings with such instructions as the court considers appropriate, subject to subsection (g);
> · · ·

18 U.S.C. § 3742(f)(2) (emphasis added). Under subsection (f)(2), then, it seems clear that if we ultimately decide that a sentence is neither "too high" (subsection

---

**2.** Of course, it is worth noting that the difference between giving *no* statement of reasons at all, as was the case in *Gonzalez* and *Zackson*, and reciting the reasons orally on the transcript of record, as here, is significant. The former is a serious defect preventing meaningful appellate review, while the latter clearly is not.

(A)) nor "too low" (subsection (B)), we do not have any obligation to remand. *See also* 18 U.S.C. § 3742(f)(3) (providing that if the court of appeals determines that the sentence is not described in subsections (f)(1) or (f)(2), "it shall affirm the sentence"). At least two other circuits have adopted this reading of the statute, taking the position that a remand is unnecessary where, as here, the District Court clearly stated the reasons for its departure from the Guidelines on the record (but did not supply a *written* statement of reasons in the judgment). *See, e.g., United States v. Daychild,* 357 F.3d 1082, 1107–08 (9th Cir. 2004); *United States v. Orchard,* 332 F.3d 1133, 1141 n. 7 (8th Cir.2003); *cf. United States v. Dickerson,* 381 F.3d 251, 263–64 (3d Cir.2004) ("We need not address whether the District Court's written statement was sufficiently specific in light of the requirements in 18 U.S.C. § 3553(c), as the parties do not dispute the adequacy of the written statement."); *United States v. May,* 359 F.3d 683, 688 n. 5 (4th Cir.2004) (determining that remand was not required where, although district court failed to provide a written statement of reasons, the parties did not raise the issue and the record was sufficient to permit *de novo* review).

If we read subsection (f)(1) in the manner suggested by the government—such that a district court's failure to provide a written statement of reasons qualifies as a violation of law that automatically requires a remand—the reference to the written statement of reasons in subsection (f)(2) becomes entirely superfluous. Such a reading "violat[es] a basic tenet of statutory interpretation" and should be disfavored. *DeMaria v. Andersen,* 318 F.3d 170, 177 (2d Cir.2003); *see also Connecticut ex rel. Blumenthal v. United States Dep't of Interior,* 228 F.3d 82, 88 (2d Cir. 2000) ("[W]e are required to 'disfavor interpretations of statutes that render lan-

guage superfluous.'") (*quoting Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)), *cert. denied,* 532 U.S. 1007, 121 S.Ct. 1732, 149 L.Ed.2d 657 (2001).

■ We decline to resolve this problematic question of statutory interpretation on this appeal and, instead, exercise our discretion to remand the case to the District Court for the very limited purpose of amending the written judgment and conviction order to set forth in writing its reasons for granting the section 5K2.6 upward departure. As we have done in the past, we remand without vacatur in order to allow for amendment of the written judgment. *See, e.g., United States v. A-Abras Inc.,* 185 F.3d 26, 29–30 (2d Cir. 1999); *United States v. Marquez,* 506 F.2d 620 (2d Cir.1974). To be clear, this remand does not constitute a ruling that we lack the authority to affirm the District Court in the absence of a written statement of reasons; we issue this limited remand precisely to avoid deciding that question of law.

This panel retains jurisdiction to hear Santiago's challenge to the departure once the record has been supplemented. *See United States v. Jacobson,* 15 F.3d 19, 21–22 (2d Cir.1994). Accordingly, the clerk is directed to issue the mandate, which shall provide that either party may restore jurisdiction over the appeal to this panel by filing with the Clerk's Office a copy of the amended judgment and a letter advising the Clerk's Office that jurisdiction should be restored.

All of the foregoing is subject to the Supreme Court's decision in *United States v. Booker,* No. 04–104 (U.S. *cert. granted* Aug. 2, 2004) (mem.), and *United States v. Fanfan,* No. 04–105 (U.S. *cert. granted* Aug. 2, 2004) (mem.).

## CONCLUSION

For the reasons stated above, this case is affirmed in part and remanded in part for further proceedings consistent with this opinion.